## DEPARTMENT OF WELFARE v. FOX.

Court of Appeals of Kentucky.
May 29, 1951.

A. E. Funk, Atty. Gen., Squire N. Williams, Jr., Asst. Atty. Gen., Hensley & Logan and Jos. P. Pike, all of Louisville, for appellant.

Edwin P. Mengel and Tilford & Wetherby, all of Louisville, for appellee.

CAMMACK, Chief Justice.

This appeal raises the question of the constitutionality of KRS 203.110(2).

John W. C. Fox, administrator of the estate of George Spatz, filed a final settlement in the Jefferson Circuit Court. The heirs of Spatz and the Department of Welfare were named as defendants. The pleadings disclose these facts: Spatz was committed to the General State Hospital as a person of unsound mind in 1924. He remained in the custody of the Department of Welfare until his death in 1949. Fox qualified as Spatz' committee in 1946, at which time Spatz had no separate estate. Spatz inherited some property just prior to his death and Fox, who then qualified as administrator, valued the total estate at $3989.83, less expenses. Fox listed as a claim against the estate $1800 owing to the Department of Welfare. The Department counterclaimed and stated that, from the time Spatz was committed to its custody in 1924 until 1948, his board rate was fixed pursuant to statute at $360 per annum and $600 per annum from 1948 until his death, making a total of $9136.45 due. Fox replied and pleaded the statute of limitations. The Department demurred to the reply and the demurrer being overruled and the Department declining to plead further, the court denied that portion of the Department's claim of $9136.45 in excess of $1705. From that judgment the Department appeals.

Fox, in pleading the statute of limitations, relied upon KRS 413.120, which provides:

"The following actions shall be commenced within five years after the cause of action accrued: * * *

"(2) An action upon a liability created by statute, when no other time is fixed by the statute creating the liability. * * *"

Actions by the Commonwealth are made subject to this statute in KRS 413.150, which provides: "The limitations prescribed in this chapter shall apply to actions brought by or in the name of the Commonwealth the same as to actions by private persons, except where a different time is prescribed by statute."

In enacting these statutes, the Legislature was cognizant of the fact that a different time might be prescribed for limitations to run upon statutory liabilities. The Department contends that KRS 203.110(2) is applicable to their situation. That section reads as follows: "(2) The statute of limitation providing the time in which actions for such recovery may be instituted shall not run against recovery herein provided for until from and after the time at which said estate is acquired."

A review of KRS, Chapter 203, is necessary at this point. That Chapter provides for the custody, support and treatment of incompetents. It deals with the various classes of patients who are admitted to state institutions. Some classes of patients, such as drug addicts, may be admitted on a voluntary basis. Some are admitted as a result of inquests regarding the condition of their minds and mental faculties. Payment of board is generally required in advance with but few exceptions, and a pau-

per patient comes within the exceptions. KRS 203.080 provides: "(1) When a patient has an estate which can be subject to debt, the patient shall be liable for his board and maintenance, * * * at the rate fixed by the department or so much thereof as the estate will suffice to pay for the time the patient has been kept and maintained therein, if not otherwise paid for."

KRS 203.090 authorizes the Department to fix uniform rates to be charged patients. Finally, KRS 203.110, which is the statute in controversy, authorizes the Attorney General to employ counsel to institute proceedings "to enforce the payment or reimbursement for board and maintenance of patients", and then provides that the period of limitation shall not run "until from and after the time at which said estate is acquired." Under these statutes, board rates are charged incompetents having the status of paupers when they are committed to the Department's care. These rates accrue yearly and are carried as continuing charges against the patient.

Fox argued, of course, that, under the general statute of limitations, the cause of action accrued from year to year and the five year limitation ran from the date each yearly liability was incurred. It is apparent that the limitation statute on which the Department relies covers expressly this situation and gives the Department an opportunity to collect for all back charges against a pauper patient within five years from the time he might subsequently acquire an estate of his own. We are confronted with the question of whether this statute violates Section 59 of the Constitution, which prohibits the General Assembly from passing local or special acts:

"Fifth: To regulate the limitation of civil or criminal causes.

"Sixth: To affect the estate of cestuis que trust, decedents, infants or other persons under disabilities, or to authorize any such persons to sell, lease, encumber or dispose of their property."

■■ A study of the common law, as to whether statutes of limitation ran against the sovereign, discloses these rather general propositions. In England, they never ran against the Crown, and that principle has been followed in the United States. The reason for such state immunity was based upon the public policy of protecting citizens of the state from the loss of their public rights and property through the negligence of state officers. The state may, as our own Legislature has done, provide in what instances the statute shall run against the state, as in the case of private persons. The courts are many times confronted with situations in which it is necessary to determine whether the state is the real party in interest. Thus, where a suit is brought in the name of the state, a defense of laches or limitations may be made when its name is used to enforce a right which inures to the benefit of an individual or a corporation and the state has no real interest in the litigation. The converse of this is true also, and when a suit is for the sole benefit of the state, although not brought in its name, the defense of the statute of limitations can not be made.

There are conflicting decisions on whether this state immunity is extended to agencies and other bodies created by it for special purposes. Courts in other jurisdictions have considered the nature of the agencies created to ascertain whether they are truly governmental arms of the state, or whether they are created merely for convenience in dealing with problems of a proprietary nature. The claim that an agency seeks to assert is scrutinized to determine if it is based upon a private or a public right. As we have pointed out, most of these general propositions have been limited by statute.

■■ The Department of Welfare is a governmental arm of the state in its function of caring for incompetent persons. In this aspect, it acts for the protection of society and the promotion of the best interests of those unfortunate people of the Commonwealth. If the Legislature had not spoken, no statute of limitations would run against the Department on this claim. It follows that the Legislature could waive that immunity partially, or in any manner it saw fit.

The lower court was of the opinion, however, that, if the Legislature waived this immunity and legislated on the subject, it must do so in a reasonable manner. In a well considered opinion, he said: "The claim is made by the defendant that there can be no statute of Limitation against the sovereign power of the State except such as may be specifically enacted by the legislature. However, the fact remains that the legislature did in this case specifically limit the State beyond and not to the same extent as in the case of the individual, * * *" The lower court evidently thought that, when the Legislature waived immunity from the running of the statute, it must not provide a different time than that provided for private persons. To express it another way, the court thought that this classification for the Department of Welfare on this particular claim was arbitrary.

■ The lower court relied upon City of Louisville v. Kuntz, 104 Ky. 584, 47 S.W. 592. In that case legislation prescribing a different limitation on actions brought against the City of Louisville was struck down as being special. The basis of the opinion, however, was that the City of Louisville was singled out from other cities and the court could see no reason why Louisville should be classified separately as to actions against it. The principle in that case is sound, but we do not think it is controlling in this situation. We have held many times that legislation is not special if the classification is reasonable and operates on all persons and subjects within the class equally.

■ Is there a valid reason for allowing a statute of limitations which is favorable to the Department of Welfare, at least as opposed to claims of other creditors of an incompetent person? We think that there are compelling reasons for so ruling. The Commonwealth has assumed the obligation of the care and welfare of pauper patients. The responsibility is imposed upon the Department and upon no one else. To impose such duties upon any person, be it a state agency or a private citizen, creates a somewhat anomalous situation. Other creditors of an incompetent are not subjected to this responsibility. If the charges are not collected, the loss falls on the people of the state, and if a pauper subsequently is able to pay for the care rendered him by the people it is only just that he do so. The circumstances invited legislative attention. KRS 203.110 is a natural and reasonable recognition by the Legislature of the problem created by those circumstances. The imposition on the Department of the obligation of feeding and caring for pauper incompetents warrants the application of a different period of limitations in actions to recover for the benefit of the people monies expended for such care. Indeed, it would work a hardship to impose such burdens without likewise giving special attention to the fact that the general statute of limitations would not be readily adaptable to the situation. It is obvious that pauper patients can not pay the yearly charges against them. If the Department were free to refuse to accept such patients (which it is not), it could not complain about a statute of limitations running from the time the charges were made. The impracticality of the general statute of limitations was realized by the Legislature and a more realistic one was adopted to meet the situation. The classification is not arbitrary, but has a sound and reasonable basis.

■ For the same reasons we think that the legislation is not special in regard to the estates of incompetents. The classification, as we have pointed out, is valid and it operates alike upon all persons within the class. KRS 203.110 is constitutional, and the Department of Welfare may rely upon it.

Judgment reversed, with directions to set it aside, and for the entry of a judgment consistent with this opinion.